UNITED STATES DISTRICT COURT
DISTRICT OF NH
THE DISTRICT OF NEW HAMPSHIRE
FILED

2018 MAY 23 P II: 50

24 HOUR DEPOSITORY

| | |
|---|---|
| Brian J. Goodman, Sr. ) | |
| Plaintiff, ) | |
| ) | Case No: 1:17-cv-00199-JL |
| v. ) | |
| ) | |
| Wells Fargo Bank, N.A.; Golden West Financial ) | |
| Corporation ) | |
| Defendant. | Jury Demand |

### PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY

**Now Comes** Plaintiff, Brian J. Goodman, Sr. *in propria persona*, and makes this Surreply in response to Defendant's Reply to Plaintiff's Objection.

1. Plaintiff first corrects a statement made by Defendant relative to Plaintiff's perceiving the litigation privilege as applied in New Hampshire as a "sham" or a "hoax". Rather, it is Defendant's invocation of it as a defense to which Plaintiff objects.

2. Plaintiff otherwise here begins by addressing Defendant's inordinately long argument relative to a purported litigation privilege - even in light of false statements willfully made (Reply, p 2, ¶1). Plaintiff understands the privilege as applied in NH (see Obj, p 2, #4) and states that the litigation privilege does not apply. This is established in part, by an analysis of the case law referenced, as well as the reality of the "attorney partner network" to which both Attorneys Kennedy and Bizar belong and the agreements made as a result of that "partnership".

3. Plaintiff first addresses the "inapplicable" *Conant &a. v. O'Meara*, 167 N.H. 644, 648 (2015) where the court held "[a]s officers of the court, attorneys are prohibited from making

1

false statements of material fact to a tribunal." In using the term "inapplicable", Defendant has mischaracterized the decision. In a 16 page Order, the *Conant* court spent approximately half the space setting down NH law relative to "fraud upon the court" as perpetrated by "an officer of the court". It centered its whole discussion around *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944). The court embraced that decision as a model for defining fraud upon the court and the standard to which attorneys, as officers of the court, are to be held in NH. *Hazel* was an *adversarial* scenario. It was no action brought by clients against their own attorney, which is the reason Defendant here argues *Conant* as being inapplicable. The truth is, by accident, *Hazel* found out that Defendant's counsel, twelve years previous, had taken part in the creation and distribution of an article that had a material effect on the outcome of the case. The decision was vacated years later for the fraud perpetrated by the attorney in creating false evidence presented during the *Hazel* judicial proceeding.  While *Conant* was not a case that spoke to the litigation privilege, it did speak to NH's intolerance of fraud upon the court and the officers of the court who perpetrate it.   What is going to happen very soon is the exposure of the extent to which massive fraud and a lie has been perpetrated upon NH's courts by officers of the court who are supposed to be practicing according to federal and state law, as well as the professional rules of conduct.

4. Defendant again quoted *McGranahan (McGranahan) v. Dahar*, 119 N.H. 758, 763 (1979) and added *Pickering (Pickering) v Frink*, 123 N.H. 326, 328-29 (1983), *Provencher (Provencher) v. Buzzell-Plourde Assocs.*, 142 N.H. 848, 853-54 (1998); and *Hugel (Hugel) v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP* , 175 F. 3d 14, 18 (1st Circ. 1999) to the mix. Like *McGranahan*, *Pickering* was totally about defamation and libel. Other than *McGranahan*, the primary citations in *Pickering* were 50 AM. JUR. 2d Libel and Slander § 193, at 696 (1970); 50 AM. JUR. 2d Libel and Slander § 195, at 698 (1970); 50 AM. JUR. 2d Libel and Slander § 219, at 730-31 (1970); and 53 C.J.S. Libel and Slander § 116, at 193 (1948). *Hugel* focused on

defamation. *Provencher* focused on witnesses. Other key elements of the discussion include: 1) There is no traditional attorney-client relationship allowing for any privilege in that counsel were not representing the clients upon whose behalf they appeared (borne out by counsel 's current "client" account number reflecting "Seyfarth" and "Fidelity"); 2) It is now made evident why Defendant is desperate to the point it jumped the gun as to liability of Wells Fargo & Company relative to Golden West (trying to keep the only named defendant Wells Fargo Bank, N.A. in the mix and then claiming absolute immunity relative to the instant action; and 3) there is no immunity for the criminal acts of fraud and conversion.

  5.  *U.S. v Bach*, 172 F.3d 520, 523 (7th Circ.1999) states, "Crimes and torts frequently overlap. In particular, most crimes that cause definite losses to ascertainable victims are also torts; the crime of theft is the tort of conversion…and the crime of fraud is the tort of fraud." NH RSA 637 bears out that statement. Further, In *Hugel*, the Court stated. "Fed.R.Civ.P. 11(b)(3) imposes a duty on attorneys to certify that, 'to the best of [their] knowledge … factual contentions in a pleading have evidentiary support. Ensuring the integrity of their representations is a serious responsibility that attorneys may not take lightly, and we caution against the deliberate or careless use of unsubstantiated allegations, notwithstanding their relevance."

  6.  Another case relative to litigation privilege, *Supry v. Bolduc*, 112 N.H. 274, 293 A. 2d 767 (1972) states, "The occasion determines the existence and scope of the privilege if any ... and the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom or expression without inquiry into a defendant's motives." Another litigation privilege case, *Lykowski v. Bergman*, 299 Ill.App.3d 157 233 Ill.Dec. 356, 700 N.E.2d at 1071 (at 164-65), spoke to the issue of public interest and policy: "public policy requires that there be a free-flow of honest information to a court". Plaintiff here places the emphasis on "honest". The 9th Circuit concluded, in *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009), that there is a "basic

constitutional right to be free from the knowing presentation of false or perjured evidence."

7. As to claims brought and "lost" in previous litigation, Plaintiff refers back to *Conant*. Even if Plaintiff suspected, but had no evidence, NH law relative to fraud, generally, as well as fraud upon the Court applied as per *Conant* protects Plaintiff. Plaintiff did suspect, but had no evidence of false statements about material facts being made by Attorney Kennedy's co-counsel, Attorney Bizar, in previous litigation. As to "after-discovered" fraud, *Conant* states, "under our case law ... the 'after-discovered' factor, if required at all, does not mean that the party seeking to set aside the judgment cannot have suspected fraud during the prior proceeding", and gave the example of *Craft v. Thompson*, 51 N.H. 536 (1872) where, "while the plaintiff alleged that the defendant testified falsely, the plaintiff 'was then and there unable to furnish definite and positive evidence to contradict the statement'" *Id*.

8. Extrinsic fraud by which the purported subject transactions were executed negates *Res Judicata*. Defendant infers, relative to Rooker Feldman, that *Kougasian v TMSL, Inc.* 359 F.3d 1136 (9th Circ. 2004) regards *Wang (Wang) v. New Hampshire Bd. of Registration in Med.*, 55 F. 3d 698, 703 (1st Circ. 1995) in a negative light. While *Kougasian* disagrees with the "broad meaning" attributed to "inextricably intertwined" by *Wang*, that beyond comprehensive decision still applies. This action also meets the stricter "test" set by both *Wang* and *Wilson v. Shumway*, 264 F. 3d 120, 124-26 (1st Circ. 2001) as well as the decision in *Rosenfeld v. Egy*, 346 F.3d 11 (!st Circ. 2003) . In *Wang*, "a favorable decision [in the federal action] would require the district court to conclude that the probate court had erred in its opinion." The reality: Plaintiff has not asserted legal error by the state court in this action. There is no need, even as the acts of the attorneys are exposed. As to *Rosenfeld*, "The federal claim is inextricably intertwined with the state-court claims if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Plaintiff is not saying in this action the state court "wrongly

4

decided". Again, there is no need. The focus is on the extrinsic fraud perpetrated at the beginning. Because Plaintiff seeks damages for activity predating state litigation which caused injury independent of that litigation, Rooker Feldman is no bar. *Iqbal v. Patel*, No. 1959, (7th Circ. 2015) As to collateral estoppel, Plaintiff would like Defendant to show where conversion and fraud by which it was perpetrated as well as underlying extrinsic fraud were previously presented. Plaintiff could not have brought such claims because he had no knowledge to be able to do so. *U.S. v. Throckmorton*, 98 U.S. 61 (1878).

9. Attorney Kennedy has added to the false statements. No original notes or mortgages were presented in open court at any hearing (or at any other time). Wells Fargo's "ownership" status was achieved through false statements and is impossible, especially in light of the "merger chain" recently set forth by Defendant. As to other topics raised by Defendant, specifically, the economic loss doctrine, unjust enrichment, statutes of limitations, HOLA, and the UCC, Plaintiff reasserts arguments made in his Objection. Plaintiff does here address his intent as maker of the note. It is an issue, and thus a question, of fact. As to "contrary authority" relative to the non-negotiable nature of the note, it only takes a cursory analysis of the subject notes to establish they do not meet the definition of a negotiable instrument according to the only sources that matters, NH RSAs 382-A:3-104 and 106. As to "*Galvin*" references, Plaintiff covered that in "Ledoux".

10. The entire scheme relative to rehypothecation was admitted by Golden West. World Savings Bank originated loans to be used by its parent in rehypothecation. Plaintiff did not authorize such use. Defendant refuses to use the word "rehypothecation", instead referring, ongoing and improperly, to "transferring" notes in context with "securitization".

11. Plaintiff respectfully reiterates its request that the Court Deny Defendant's Motion to Dismiss his Amended Complaint; and Require that it Answer the Complaint.

Date:  May 23, 2018              Respectfully submitted:

*[signature]*
Brian J. Goodman, Sr., *in propria persona*
42 Hall St.
Concord, NH  03301
(603) 892-4841

**Verification:**

I, Brian J. Goodman, Sr., in accordance with 28 U.S.C. Code § 1746, declare under penalty of perjury that facts presented in the foregoing Surreply are true and correct to the best of my personal knowledge and belief.

Executed May 23, 2018

*[signature]*
Brian J. Goodman, Sr.

### Certificate of Service

I, Brian Goodman, certify this day that a copy of this Surreply was sent via US mail, postage prepaid, to J. Patrick Kennedy, counsel for defendant, at:  Seaport East, Two Seaport Lane, Suite 300, Boston, MA 02210-2028

Date:  May 23, 2018              *[signature]*
                                 Brian J. Goodman, Sr.