UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Brian Goodman, Sr.

     v.

Wells Fargo Bank, N.A. and
Golden West Financial Corp.

Civil No. 17-cv-199-JL
Opinion No. 2018 DNH 189


**OPINION AND ORDER**

This mortgage-fraud case involves two properties in
Concord, New Hampshire that have been sold at foreclosure.  Pro
se plaintiff Brian Goodman, Sr. alleges that two mortgage
refinancing transactions in 2007 were the product of fraud
committed by defendants or their predecessors in interest.  His
Amended Complaint[1] contains seven counts against two defendants:
1) fraudulent misrepresentation; 2) fraudulent concealment; 3)
fraudulent inducement; 4) conversion; 5) common law fraud; 6)
unjust enrichment; and 7) a request for injunctive relief.  The
court's jurisdiction is based on diversity of citizenship.  28
U.S.C. § 1332(a).

Before the court are defendants' motions to dismiss.[2]
Defendant Golden West argues that it merged out of legal

---

[1] Doc. no. 34.

[2] Doc. nos. 36 (Wells Fargo) and 37 (Golden West).

existence prior to the transactions at issue in this case and thus can not be sued. Defendant Wells Fargo Bank, N.A. advances several grounds for dismissal. After reviewing the parties' submissions and state court litigation involving the same parties and properties, and conducting oral argument, the court grants both defendants' motions. First, Golden West lacks the capacity to be sued. See Fed. R. Civ. P. 17(b). Next, plaintiff's claims against Wells Fargo are barred, in whole or part, by: 1) the doctrines of res judicata and collateral estoppel; and 2) the applicable statutes of limitations. Defendants' motions are therefore granted. See Fed. R. Civ. P. 12(b)(6).

## I. <u>Applicable legal standard</u>

To withstand a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Martinez v. Petrenko</u>, 792 F.3d 173, 179 (1st Cir. 2015). In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor. <u>See, e.g.</u>, <u>Martino v. Forward Air, Inc.</u>, 609 F.3d 1, 2 (1st Cir. 2010).

The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotations omitted). The court "need not, however, credit bald assertions, subjective characterizations, optimistic predictions, or problematic suppositions," and "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotations omitted). In addition to relating the allegations in the Amended Complaint, the court also culls background facts from the judicial findings during the parties' prior proceedings. See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."). Finally, a motion to dismiss is an appropriate vehicle for raising and deciding a statute of limitations defense. See, e.g., Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014). Guided by these standards, the court turns first to plaintiff's allegations and the prior proceedings.

## II.  **Background**

A. The properties

In November 2007, plaintiff refinanced two income properties he owned in Concord, New Hampshire.  First, he executed a note and mortgage in connection with his property at 26-28 Palm Street.[3]  The note had a face value of $185,000, payable to "World Savings Bank, FSB, a Federal Savings Bank, its successors and/or assigns, or anyone to whom this Note is transferred."[4]  It was secured by a mortgage granted to "World Savings Bank, FSB, its successors and assigns."[5]  The mortgage was recorded at the Merrimack County Registry of Deeds.[6]

A few days later, plaintiff executed a note and mortgage in connection with his property at 14-16 Pinecrest Circle.  This note had a face value of $217,000, also payable to "World Savings Bank . . . its successors and/or assignees, or anyone to whom this note is transferred."[7]  Plaintiff granted a mortgage to secure the note to "World Savings Bank, its successors and/or

---

[3] Amended Complaint (doc. no. 34) ¶ 24.

[4] Id., Exh. C.

[5] Id.

[6] Id. ¶ 25.

[7] Id. Exh. F.

assigns."[8]  This mortgage was also recorded in the Rockingham County Registry of Deeds.[9]

Plaintiff "disclaims both the authenticity and legitimacy" of the notes and mortgages "derived through deceitful means and filed in deceit with a state agency for purposes of legitimizing" them.[10]

## B. World Savings Bank merger

Effective December 31, 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB.  In 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Southwest, N.A. and subsequently merged with Wells Fargo Bank, N.A.  Both parties acknowledge that defendant Wells Fargo Bank, N.A. is therefore the successor in interest to World Savings Bank.[11]  See Park v. Wells Fargo Bank, No., C 12-2065-PJH, 2012 WL 3309694, at *2 (N.D. Cal. Aug. 13, 2012) ("Numerous courts have . . . concluded that Wells Fargo is the successor to Wachovia and World Savings."); Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010) ("[T]he original lender, World Savings Bank, FSB, simply

---

[8] Id.

[9] Id. Exh. H.

[10] Id. ¶¶ 25, 27.

[11] See id. ¶ 31.

changed its name to Wachovia Mortgage, FSB, and is now a division of Wells Fargo Bank, N.A. . . ."); DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1121 (N.D. Cal. 2010) ("World Savings had changed its name to Wachovia Mortgage, FSB and then merged into Wells Fargo Bank, N.A.").

C. State court litigation

    In 2010 or 2011, Wells Fargo began the process of foreclosure of the two properties after plaintiff fell behind on his mortgage payments.  After several years of litigation which will be discussed in more detail below, the properties were sold at foreclosure in 2017.[12]

    1.  Pinecrest Circle

    In February 2011, plaintiff, represented by counsel, sued Wells Fargo in state court to permanently enjoin the impending foreclosure sale of the Pinecrest Circle property.[13]  The Court granted plaintiff temporary injunctive relief and plaintiff began making mortgage payments pursuant to an agreement with

---

[12] Amended Complaint (doc. no. 34) ¶ 62.

[13] See Goodman v. Wells Fargo Bank, N.A., No. 11-CV-093, (N.H. Super., May 14, 2015) (doc. no. 36-3 at 32).

Wells Fargo.[14]  Eventually, the payments stopped and foreclosure proceedings resumed.[15]

In his state court Amended Complaint, filed in January 2015, plaintiff accused Wells Fargo of, _inter alia_, fraud.[16]  He specifically alleged that Wells Fargo used false statements to support its foreclosure efforts and that it was not the true holder of the mortgage.[17]  The Superior Court found that plaintiff's defenses to foreclosure were factually unsupported and granted summary judgment in Wells Fargo's favor.[18]

In a three-paragraph order, the New Hampshire Supreme Court affirmed the trial court's summary judgment ruling.[19]  It rejected, among others, the arguments that the Superior Court erroneously concluded that "he defaulted on his mortgage loan to the bank" and "that there were no genuine issues of material fact regarding whether he had defaulted, the bank had a loan in his name, the bank held the original note, and the note had

---

[14] _Id._ at 34-35.

[15] _Id._ at 35.

[16] Doc. no. 36-3 at 15.

[17] _Id._ at 15-18.

[18] _Id._ at 38.

[19] Goodman v. Wachovia Mortg., No. 2015-0415, 2016 WL 4099372 (N.H. June 14, 2016) (Doc. no. 36-3 at 79).

passed to it by operation of law."[20]  The Supreme Court later
denied plaintiff's motion for reconsideration.[21]

### 2.  Palm Street

In March 2011, plaintiff, again represented by counsel,
sued Wells Fargo to enjoin the scheduled foreclosure on the Palm
Street property.[22]  The Court temporarily enjoined the
foreclosure.[23]  In addition to seeking the injunction, plaintiff
alleged in his five-count Amended Complaint[24] that, inter alia,
Wells Fargo failed to create a valid mortgage because it failed
to pay off plaintiff's previous mortgage and because it
"securitized" plaintiff's mortgage and note.[25]  The latter
actions, according to plaintiff, "destroyed" the mortgage and

---

[20] Id. at 79.

[21] Id. at 81.

[22] Goodman v. Wells Fargo Bank, N.A., No. 11-CV-135, (N.H.
Super. May 14, 2015) (Doc. no. 36-2 at 26).

[23] Id.

[24] Id. at 10-23.

[25] Id. at 17-18.  Securitization is "the creation of a
mortgage-backed security: mortgage loans are purchased from
lenders, bundled, and combined to create a single debt
instrument.  Interests in this instrument can then be sold to
investors who enjoy the benefit of the revenue stream flowing
from the mortgage payments."  Culhane v. Aurora Loan Servs. Of
Nebraska, 708 F.3d 282, 286 n.1 (1st Cir. 2013).

note.[26]  Plaintiff also alleged that Wells Fargo violated New

Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-

A, by fraudulently misrepresenting various terms of the mortgage

agreement.[27]

On the same day that it granted summary judgment in the

Pinecrest suit, the Superior Court granted Wells Fargo's motion

to dismiss the Palm Street suit.  As particularly relevant to

this lawsuit, the Court held that "even if the note and mortgage

were securitized, their validity would not be destroyed as the

plaintiff suggests . . . . [S]ecuritization of the mortgage and

note does not relieve the plaintiff of his obligation to pay

under their terms and conditions."[28]  The Court further found

that plaintiffs' fraud allegations were barred by New

Hampshire's three-year statute of limitations, N.H. Rev. Stat.

Ann. § 508:4.[29]  And even if timely, the Court ruled that

plaintiff's Amended Complaint failed to plead facts that

amounted to fraud.[30]

---

[26] Id.

[27] Id. at 18-22.

[28] Id. at 29-30.

[29] Id. at 33.

[30] Id.

The New Hampshire Supreme Court affirmed the dismissal of the Palm Street suit in a brief order.[31]  As particularly relevant here, the Court rejected plaintiff's arguments that the trial court erred in dismissing his fraud claim, his securitization-related claim and his claim that Wells Fargo did not hold the original note and mortgage.

## III. **Analysis**

A. Golden West

In his Amended Complaint in this action, plaintiff added Golden West Financial Corp. as a defendant.[32]  Golden West seeks dismissal on the basis that it lacks the capacity to be sued, having merged out of existence in 2006.[33]

The precise contours of plaintiff's claims against Golden West are difficult to discern, beyond his noting that it was a participant in securitizing mortgages, an act which, he claims, forms the basis of his fraud allegations.  Golden West seeks

---

[31] Goodman v. Wells Fargo Bank, N.A., No. 2015-0424, 2016 WL 4102081 (N.H. June 10, 2016).  The Court also denied a subsequent motion for reconsideration.  Doc. no. 36-2 at 43.

[32] Amended Complaint (doc. no. 34) ¶¶ 32-42.

[33] As Golden West was eventually subsumed by Wells Fargo, counsel for the latter moved on behalf of Golden West.  Contrary to plaintiff's numerous assertions, there is nothing nefarious about, and no relevant inference to be drawn from, counsel's filing.

dismissal because it merged with Wachovia Corp. (and out of existence) in October 2006, long before plaintiff filed this lawsuit, and more than one year before the parties executed the mortgages at issue in this case.[34]  Thus, Golden West argues, it lacks the capacity to be sued.  See Fed. R. Civ. P. 17(b).

Pursuant to Fed. R. Civ. P. 17(b)(2), a corporation's capacity to be sued is determined pursuant to the "law under which it was organized."  Similarly, "[t]he federal courts have held that the capacity of a dissolved corporation to sue and be sued is determined by the law of the state in which it was organized."  6A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1563 (2010) (and cases cited therein).  Golden West asserts, without objection, that it was organized under the laws of California.[35]  Under California law, following a merger, "the separate existence of the disappearing corporation ceases and the surviving corporation shall . . . be subject to all the debts and liabilities of each in the same manner as if the surviving

---

[34] Mem. of Law (doc. no. 37-1) at 6.

[35] Golden West attached to its motion various documents filed with the United States Securities and Exchange Commission. Doc. nos. 37-2 - 37-5.  The court takes judicial notice of these public and undisputed documents.  See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

corporation had itself incurred them." Cal. Corp. Code §
1107(a).[36]

Plaintiff does not dispute that Golden West merged out of
existence before he filed this lawsuit. Indeed, he acknowledges
that the mergers of Golden West with Wachovia and Wachovia with
Wells Fargo means that "all allegations and claims made against
World Savings Bank . . . Golden West and Wachovia are hereby
consolidated and directly lodged against Wells Fargo Bank, N.A.,
as successor in interest."[37] Rather than disputing the fact that
Golden West merged out of existence prior to the relevant events
in this case, plaintiff asserts that counsel's act of filing the
instant motion somehow resurrects the putative defendant.[38] But
plaintiff cites no authority for this position, nor can the
court locate any.[39] Accordingly, the entity formerly known as

---

[36] While California law permits a pending action to proceed
against a "disappearing corporation," Cal. Corp. Code § 1107(d),
it is undisputed that Golden West "disappeared" long before
plaintiff filed this suit.

[37] Amended Complaint (doc. no. 34) ¶ 31.

[38] Pltff. Obj. (doc. no. 42) at 5.

[39] Plaintiff relies on cases holding that a general
appearance waives objections to personal jurisdiction. Pltff.
Obj. (doc. no. 42) at 5. As Golden West is not contesting
personal jurisdiction, those cases are inapposite. Plaintiff
further argues that if the "purported defendant" Golden West
"can gain relief thought this Court, than (sic) Plaintiff can
gain relief through that Defendant in this same forum. That is
how logic works – with or without the added dimension of the law
to cloud the issue." Pltff. Surreply (doc. no. 46) at 3.

Golden West lacks the capacity to be sued and its motion to dismiss must be granted.

B. Wells Fargo

Wells Fargo asserts several grounds for dismissal. The court addresses them in turn.

1. Res judicata

Wells Fargo first argues that all of plaintiff's claims in this lawsuit are barred by the doctrine of res judicata, based on the two prior state court judgments. As discussed in more detail below, the state court rulings conclusively established the non-fraudulent validity of both the Pinecrest and Palm Street transactions. Plaintiff's claims are therefore barred.

"Under federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state in which it was rendered." Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011). Under New Hampshire law:

> Res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action. For the doctrine to apply, three elements must be met: (1) the

---

Whatever the merits of plaintiff's logic-based argument, the court is required to apply the law. In the Court's view, the applicable law embodies and applies logic, and does not, as the plaintiff suggests, cloud it.

> parties must be the same or in privity with one
> another; (2) the same cause of action must be before
> the court in both instances; and (3) a final judgment
> on the merits must have been rendered in the first
> action.

Brooks, 161 N.H. at 690.  The defendant bears the burden of
establishing that res judicata bars plaintiff's claims, see
Dillon, 630 F.3d at 80.

   The first factor is easily satisfied, as defendant Wells
Fargo, N.A. was also a defendant in both state court suits.  The
third factor is also satisfied, as both judgments were resolved
on summary judgment and affirmed on appeal.  The court finds
that this case also involves the same cause of action as the
Superior Court cases, and is therefore precluded by res
judicata.

   In applying res judicata, New Hampshire law defines "cause
of action" to include "all rights to remedies with respect to
all or any part of the transactions, or series of connected
transactions, out of which the [first] action arose."  Grossman
v. Murray, 141 N.H. 265, 269 (1996).  "Res judicata will bar a
second action even though the plaintiff is prepared in the
second action to present evidence or grounds or theories of the
case not presented in the first action."  Sleeper v. Hoban
Family P'ship, 157 N.H. 530, 534 (2008).

Here, the "cause of action" is the question of the effect and validity of plaintiff's 2007 loan and mortgage transactions. The plaintiff's claims in this court are nearly identical to the two state-court cases – contesting the validity of the mortgages on the two Concord properties based on the alleged misfeasance of Wells Fargo or its predecessors in interest.  In the Palm Street litigation, plaintiff alleged that Wells Fargo had no right to foreclose on the property because the securitization of plaintiff's note and mortgage "destroyed" them.[40]  He also alleged that Wells Fargo and its predecessors committed fraud by inter alia, failing to disclose the terms of the mortgage loan and by securitizing them without his permission.[41]  As previously noted, the Superior Court dismissed plaintiff's claims, both because they were untimely filed and because plaintiff "failed to allege any fraudulent misrepresentation made by the defendant."[42]

Similarly, in the Pinecrest Circle litigation, plaintiff challenged Wells Fargo's right to foreclose, alleging that he did not default and that Wells Fargo did not legally hold the note and mortgage.  His specific allegations again included

---

[40] Doc. no. 36-2 at 18.

[41] Id. at 20-22.

[42] Id. at 34.

15

fraud.[43]  The Superior Court concluded that despite plaintiff's allegations, he defaulted on the mortgage and that Wells Fargo had the legal power to foreclose.[44]  And, as noted, the New Hampshire Supreme Court affirmed both rulings.

In this case, plaintiff again claims that the two mortgages are invalid as a result of actions taken by Wells Fargo or its predecessors before, during, and after the execution of the mortgages, including the Superior Court proceedings, in which plaintiff alleges that defense counsel committed "fraud upon the court" by making false statements.[45]  These are all allegations that were, or could have been, raised in the Superior Court.

Plaintiff argues that res judicata does not apply because "there is not even any need for this Court to review the state court judgment."[46]  He asserts that his federal "Complaint is focused entirely upon the extrinsic fraud committed by World Savings Bank, according to the business mission of its parent, [Golden West], at the outset of the transaction, long before litigation ever began, whereby it misrepresented and concealed

_____

[43] Doc. no. 36-3 at 15.

[44] Id. at 38.

[45] Pltff. Obj. (doc. no. 39) at 1; State Court Complaint (doc. 36-3) at 26-28.

[46] Pltff. Obj. (doc. no. 39) at 3.

material facts . . . ."[47]  Once again, if, as plaintiff contends,

the fraud occurred "at the outset of the [2007] transactions,"

then such fraud could have been alleged in the earlier

litigation.

Plaintiff's only direct response to defendant's res

judicata argument is that res judicata cannot apply:

> "because the claims don't arise out of the same
> transaction or occurrence.  On one hand, there was
> what was thought to be a legitimate transaction and on
> the other there was no "factual transaction".  Res
> judicata will not survive in the face of extrinsic
> fraud whereby there was no formation of contract.
> Fraud upon the court will result in the vacating of a
> judgment obtained by that fraud upon the court which
> in this case, revolves around supporting that
> collateral extrinsic fraud. The claims made by
> Plaintiff, in that they refer to avoid transaction
> need no vacating of the judgment obtained by fraud.
> The claims herein are for damages as a result of a
> transaction executed in fraud and the harm done
> through the associated unlawful conduct that takes the
> form of torts and statutory wrongs.  The foreclosures
> did not happen and Plaintiff has no need to contest
> the issue for purposes of this action.  Details as to
> the origination(s) had never been disputed because
> Plaintiff did not know to dispute it, was prevented
> from disputing it, even as there was terrible
> wrongdoing and convoluted narratives arising
> throughout the course of respective courses of
> litigation which in turn gave way to suspicions.[48]

This argument fails because plaintiff either did, or could

have, raised these issues in the Superior Court cases.

---

[47] <u>Id.</u> at 4.

[48] <u>Id.</u> at 10-11.

Moreover, to the extent that plaintiff relies on information in Golden West's 2005 Form 10-K,[49] he offers no explanation as to why any claims derived from that document could not have been raised in litigation that did not end until almost ten years after its publication. As to claims in this lawsuit that defense counsel allegedly committed fraud during the state court litigation, plaintiff unsuccessfully argued in the state-court litigation that Wells Fargo's counsel either fraudulently or negligently filed false documents in the Superior Court. Those claims are, therefore, also barred.[50]

The purpose of the res judicata doctrine is "to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end." E. Marine Constr. Corp. v. First S. Leasing, 129 N.H. 270, 273 (1987) (quoting Bricker v. Crane, 118 N.H. 249, 252 (1978)). Here, the court is persuaded that all of the elements of res judicata are present: the parties are the same; the prior litigation was resolved on the merits; and, finally, the cause of action – the non-

---

[49] Amended Complaint (doc. no. 34) ¶ 33.

[50] See doc. 36-3 at 25-30. Arguably, plaintiff's allegations of defense counsel's allegedly fraudulent actions in the state court litigation are "issues," rather than "causes of action." As such, they would be bared by collateral estoppel, rather than res judicata. See infra, sec. III.B.2.

fraudulent validity of plaintiff's mortgages – is identical.

See Dillon, 630 F.3d at 82 ("A second suit that contains additional factual allegations does not necessarily arise from a different factual transaction.").  Accordingly, Wells Fargo is entitled to dismissal on the basis of res judicata.  Although this ruling is dispositive of the entire case, the court briefly addresses some of the defendant's other asserted ground for dismissal.

    2.    Collateral estoppel

    Even if plaintiff's claims were not barred by res judicata, collateral estoppel would preclude him from relitigating certain issues, without which his claims would necessarily fail.

    The doctrine of collateral estoppel, or issue preclusion, "bars a party to a prior action, or a person in privity with such party, from relitigating any issue or fact actually litigated and determined in the prior action." 412 S. Broadway Realty, LLC v. Wolters, 169 N.H. 304, 314 (2016) (internal quotation marks and citation omitted).  Collateral estoppel applies when the following requirements are met:

        (1) the issue subject to estoppel is identical in each
        action; (2) the first action resolved the issue
        finally on the merits; (3) the party to be estopped
        appeared in the first action or was in privity with
        someone who did; (4) the party to be estopped had a
        full and fair opportunity to litigate the issue; and

(5) the finding at issue was essential to the first
judgment.

Id. (internal quotation marks and citation omitted).

At a minimum, the validity of the two mortgages, the fact
that plaintiff defaulted, and the right of Wells Fargo to
foreclose on the two properties were finally resolved on the
merits in the state court lawsuits.  With those facts no longer
in dispute, the essential foundation of plaintiff's federal
lawsuit – invalid mortgages – crumbles.  Accordingly, collateral
estoppel bars plaintiff's federal lawsuit.

### 3.  Statute of limitations

Even if plaintiff's claims weren't barred by res judicata
or collateral estoppel, they are untimely.

New Hampshire's applicable statute of limitations provides:

> all personal actions, except actions for slander or
> libel, may be brought only within 3 years of the act
> or omission complained of, except that when the injury
> and its causal relationship to the act or omission
> were not discovered and could not reasonably have been
> discovered at the time of the act or omission, the
> action shall be commenced within 3 years of the time
> the plaintiff discovers, or in the exercise of
> reasonable diligence should have discovered, the
> injury and its causal relationship to the act or
> omission complained of.[51]

---

[51] N.H. Rev. Stat. Ann. § 508:4, I.

All of plaintiff's claims stem from the origination of the two mortgages in 2007, more than nine years before he filed suit.

Plaintiff argues that the limitations period should be tolled "by virtue of extrinsic fraud perpetrated that took the form of misrepresentation and concealment," which delayed his discovery of his "injury and its causal relationship to the act or omission complained of."[52] But neither plaintiff's Amended Complaint nor his objection to the instant motion to dismiss reference any "facts essential to the cause of action [that were] fraudulently concealed," as New Hampshire law requires in order for a party to benefit from the fraudulent concealment rule. See Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 714 (2010).

Plaintiff's claims are in large part premised on defendants' alleged securitization and rehypothecation of his loan. He confirmed at oral argument that he learned of defendants' actions when he read Golden West's 2005 Form 10-K in 2015 or 2016, roughly the same time period that he sent "Notices of Recission" to Wells Fargo. As noted, Wells Fargo disputes that plaintiff's mortgage was securitized, but even accepting plaintiff's allegations of securitization as true, as the court

---

[52] Pltff. Obj. (doc. no. 39) at 15.

must do under Rule 12(b)(6), plaintiff alleges that Golden West

publicly disclosed that information two years before the

transactions at issue and more than 10 years before he filed

suit. This is the opposite of concealment. Plaintiff's claims

are therefore untimely.[53]

_____

[53] Even assuming that Wells Fargo's failure to disclose its intent to securitize or hypothecate plaintiff's note and mortgage could help plaintiff avoid the limitations bar, there are two substantive defects in plaintiff's argument that warrant dismissal of his claims. First, "hypothecation" is defined in terms of the lender's use of the collateral pledged to secure a debt. See Hypothecation, Investopedia (Sept. 9, 2018), https://www.investopedia.com/terms/h/hypothecation.asp. The Amended Complaint contains no allegations regarding the collateral he pledged - his real property. Plaintiff provides no legal authority for his argument that the notes were his property.

Next, courts have routinely rejected the act of securitization as a basis for a claim of wrongdoing or actionable conduct. See, e.g., Bukhari v. T.D. Serv. Co., No. 1:10-cv-000578-GMN-PAL, 2010 WL 2762794, *5 (D. Nev. July 13, 2010) ("Plaintiff's conversion claim is without merit. . . . [H]e was the maker of the promissory note.... As to [him], the promissory note therefore represented an obligation, not property or a right, and it is legally impossible for any action with respect to the promissory note to constitute conversion of anything owned by [him]."); Feller v. Indymac Mtg. Servs., No. 09-5720 RJB, 2010 WL 342187, *3 (W.D. Wash. Jan. 26, 2010) (holding that plaintiff failed to state a claim for conversion of a promissory note by her lender because "she has an obligation to pay the bearer of the note, which was IndyMac . . . The note is not property of the Plaintiff."); Rieger v. Wells Fargo Bank, N.A., No. 3:13-CV-00749 JSC, 2013 WL 3835815, *7 (N.D. Cal. July 23, 2013) (quoting Bukhari and stating "[t]he same is true here"); see also, Andersen v. LaSalle Bank, N.A., No. 15-30107-MGM, 2016 WL 3093375 at *5 (D. Mass. June 1, 2016) (Mastroianni, J.); ("While securitization has many consequences, it did nothing to affect Plaintiff's rights and obligations under the Note and

## IV.  Conclusion

Plaintiff had a full and fair opportunity in the state court to litigate his claims against Wells Fargo concerning the validity of the two mortgage transactions at issue in this case. Those claims were resolved against him, and may not be relitigated in federal court.  Defendants' motions to dismiss[54] are GRANTED.[55]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 17, 2018

cc:  Brian J. Goodman, Sr., pro se
     Joseph Patrick Kennedy, Esq.

---

Mortgage."); Orellana v. Deutsche Bank Nat'l Trust Co., No. 12-11982-NMG, 2013 WL 5348596 at *4 (D. Mass. Aug. 30 2013) (Boal, M.J.) ("[S]ecuritization by itself does not render a foreclosure invalid. . . . Orellana does not allege that he made unsuccessful attempts to pay down his loan, and fails to cite to any authority in support of his legal theories . . . Accordingly, the securitization of Orellana's note, by itself, does not support a claim for wrongful foreclosure.") (Report and Recommendation adopted by Gorton, J., Sept. 20, 2013).

[54] Doc. nos. 36 and 37.

[55] In addition to the three bases for dismissal discussed herein, Wells Fargo asserted numerous other grounds which the court declines to address.